# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FELIX NASH, JR., | ) |
|       Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-12-305-FHS-SPS ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | ) ) ) ) |
|       Defendant. | ) ) |

## REPORT AND RECOMMENDATION

The claimant Felix Nash, Jr. requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 3, 1967, and was forty-three years old at the time of the administrative hearing. (Tr. 165). He completed the twelfth grade, and has worked as an assembly line worker, customer service representative, package handler, and saw worker/weedeater. (Tr. 19, 184). The claimant alleges that he has been unable to work since February 20, 2009, due to dizzy spells, chest pains, high blood pressure, urination problems, headaches, kidney problems/pain, chest pain, and shortness of breath. (Tr. 184).

## Procedural History

On October 7, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ W. Thomas Bundy conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 13, 2011. (Tr. 11-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that

the claimant retained the residual functional capacity (RFC) to perform sedentary work, *i. e.*, he could lift/carry ten pounds occasionally and frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. The ALJ imposed the additional limitation of being able to frequently, but not continuously, handle, finger, and feel. (Tr. 15). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the regional and nation economy that he could perform, *e. g.*, escort vehicle driver or inspector. (Tr. 1621-1622).

**Review**

The claimant contends that the ALJ erred (i) by ignoring limitations related to handling impairments imposed by consultative examiner Dr. Gordon B. Strom, (ii) by rejecting the opinion of consultative examiner Dr. Karathanos, and (iii) by failing to base his RFC on substantial evidence. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The medical evidence reveals that the claimant had the severe impairments of carpal tunnel bilaterally status post successful release, hypertension, hypothryroidism, asthma, and obesity. (Tr. 14). With regard to his carpal tunnel syndrome, the claimant underwent carpal tunnel surgery on each wrist in March and January 2005. (Tr. 322, 352). A 2006 examination that the claimant had been referred to by the Oklahoma Rehabilitation Commissioner indicated that the claimant continued to complain of pain in both hands, but especially the right hand, which he said also experienced cramping,

-4-

aching, and burning sensations. The doctor noted intermittent numbness in his right hand especially, and that he was able to make a full fist. (Tr. 377-378). Dr. Strom examined the claimant on December 3, 2009. Dr. Strom noted that the claimant could extend his arms above his head, flex his elbows, rotate his wrists, and had adequate grip strength, but that he complained of pain with flexion or extension in his wrists as well as tingling and numbness in his hands. (Tr. 269). His impression, *inter alia*, was that the claimant had bilateral carpal tunnel syndrome. (Tr. 270). He indicated that the claimant could effectively oppose the thumb to the fingertips and manipulate small objects, but that he could not effectively grasp tools such as a hammer due to the tingling in his hands. (Tr. 273). Dr. Karathanos conducted a consultative examination of the claimant on January 24, 2011. He noted the claimant's complaints of carpal tunnel syndrome, and found that he had a slightly decreased grip on the left. He did not detect any spasticity, rigidity, involuntary movements, tremors, atrophy or fasciculation, but that he had difficulty in opposing the thumb to the small finger and had a positive Tinel's sign on the right. Additionally, he noted the claimant had decreased sensation to pinprick in both thenar and hypothenar areas of both hands. (Tr. 306). He assessed the claimant with chronic bilateral carpal tunnel syndrome. (Tr. 306). Dr. Karathanos also completed a Medical Source Statement as to the claimant's ability to do work. Some of his marks appear to be "check" marks, while others appear to be question marks or some other notation. As relevant to the claimant's hands, Dr. Karathanos appeared to indicate that the claimant could never handle, finger, feel, or push/pull with either hand. (Tr. 301). Additionally, he indicated that the claimant could not sort, handle, or use paper/files. (Tr. 304).

At the administrative hearings, the claimant testified that he could possibly lift 40 or 50 pounds approximately ten times. (Tr. 37-38). He stated that he had struggled at his job on an assembly line because he had to use his hands a lot and they would go numb after approximately twenty minutes so that he would drop screws everywhere. He further stated that it would take about half an hour for the feeling to come back in his hands to where he could work another twenty minutes. (Tr. 38-39). In response to questioning from the claimant's attorney, the Vocational Expert (VE) testified that if the ALJ adopted Dr. Karathanos's findings, it would eliminate all the jobs she had previously identified and that she would be unable to identify any other jobs. (Tr. 40-41).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence. As relevant to this appeal, the ALJ specifically recited Dr. Strom's notations as well as those from Dr. Karathanos. He stated that the claimant had not sought treatment for his hands since his March 2005 surgery, and noted that he had SGA earnings in 2008. (Tr. 17). The ALJ further discussed Dr. Karathanos's MSS, but gave it little weight because it was "not fully supported by and consisted with the medical evidence as a whole," criticized him for not specifying which hand the claimant could not oppose the thumb to the small finger, and further noted that the ALJ found he had carpal tunnel syndrome bilaterally despite positive Tinel's signs in only the right hand. (Tr. 18). The ALJ gave great weight to the opinions of the state reviewing physicians who found the claimant could do light work, but modified the RFC to sedentary with the above-listed further restriction based on the subjective complaints of the claimant. (Tr. 18).

The ALJ gave a boilerplate credibility assessment, and found him to be not disabled. (Tr. 16-19).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a thorough summary of both Dr. Strom's and Dr. Karathenos's reports, but provided no analysis at all of Dr. Strom's report in relation to the pertinent factors. Additionally, he assigned Dr. Karathenos's opinion "little weight" because he stated it was inconsistent with the record as a whole, but made no indication of how it was inconsistent. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The

ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).) [quotations omitted] [emphasis in original]. The ALJ found it notable that the claimant had not sought further treatment for his hands since his 2005 surgeries, but neglected to include the claimant report that he had trouble affording even his blood pressure medications. (Tr. 377). *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ engaged in improper picking and choosing to discredit evidence that was inconsistent with his RFC determination, the Court cannot find that he performed the proper analysis. *See, e. g., Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince*

*v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma